IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| UNITED SPECIALTY INSURANCE COMPANY, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 5:21-cv-06137-CV-DGK ) |
| TRAVIS WHEELER, et al., | ) ) ) |
| Defendants. | ) |

## ORDER ON VARIOUS MOTIONS

This interpleader action arises from a vehicle collision on Interstate 29 in Northwest Missouri. Plaintiffs United Specialty Insurance Company ("United Specialty") and Series 1 of Oxford Insurance Company NC LLC ("Oxford Insurance") have filed this case to distribute the alleged $1,000,000 policy limits for all claims related to this accident. Plaintiffs seek distribution among Defendants Travis Wheeler, Grant Evans, Robert Cosgrove, Wyatt Henderson, Jeffrey Lucero, Mike Kenway, Timothy Rasta, Khamidjon Murodov, Sultan Trans, Inc. ("Sultan"), T Built Products ("T Built"), and American Family Insurance ("American Family").

Now before the Court are a variety of motions: (1) Plaintiffs' amended motion to deposit funds, ECF No. 35; (2) Defendants Wheeler, Evans, Cosgrove, Henderson, Lucero, Kenway, Rasta, and T Built's motion to dismiss, ECF No. 39; and (3) Defendant American Family's motion to dismiss, ECF No. 46. The two motions to dismiss are nearly identical, and the Court refers to all these defendants together as the "Moving Defendants."

For the following reasons, the motions to dismiss are GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE, and the motion to deposit funds is DENIED WITHOUT PREJDUICE. Plaintiffs' Federal Rule of Civil Procedure 22 interpleader claim is DISMISSED

WITHOUT PREJUDICE for lack of personal jurisdiction over T Built. But the Court requires additional briefing on whether subject-matter jurisdiction exists and venue is proper for Plaintiffs' statutory interpleader claim, so that part of the motion is DENIED WITHOUT PREJUDICE.

As outlined below, the Moving Defendants shall refile a combined motion that focuses on the subject-matter jurisdiction and venue issues highlighted below within twenty-one (21) days of this Order. Plaintiffs shall file an opposition within fourteen (14) days of the Moving Defendants' motion. The Moving Defendants shall file a reply within seven (7) days of Plaintiffs' opposition. Plaintiffs may refile their motion to deposit funds, as appropriate, after the Court decides the subject-matter jurisdiction and venue issues.

## Background

Defendants Travis Wheeler, Grant Evans, Robert Cosgrove, Wyatt Henderson, and Jeffrey Lucero are members of the rock band Sleep Signals. The band was touring in 2021, and it had allegedly rented a motorhome from T Built to travel between shows. Sleep Signals was accompanied on the tour by their driver Defendant Timothy Rasta as well as their photographer Defendant Mike Kenway. In the early morning hours of August 18, 2021, Rasta was driving the motorhome on Interstate 29 to a show in St. Joseph, Missouri. While Defendant Murodov was driving a tractor trailer for Defendant Sultan on this same roadway, he crashed the tractor trailer into the back of the motorhome and caused the motorhome to overturn. The bandmembers, Rasta, and Kenway (together, "Sleep Signals Defendants") sustained injuries.

Litigation ensued. The Sleep Signals Defendants sued Defendants Murodov and Sultan in Missouri state court, alleging negligence. Plaintiffs issued the insurance policy covering Sultan's tractor trailer, and that policy requires Plaintiffs to defend Murodov and Sultan in the state court action. That litigation is still ongoing.

Shortly after the Sleep Signals Defendants filed their lawsuit in state court, Plaintiffs filed this interpleader action here. Plaintiffs' original complaint was filed under the statutory interpleader provisions, 28 U.S.C. §§ 1335, 1397, 2361. ECF No. 1. In that complaint, Plaintiffs alleged that the Sleep Signals Defendants, Murodov, and Sultan all had competing claims to Plaintiffs' insurance policy. *Id.* The Sleep Signals Defendants then moved to dismiss the complaint based on lack of subject-matter jurisdiction and improper venue. ECF Nos. 10, 11. In response, Plaintiffs amended their complaint two more times to allege an interpleader claim under Federal Rule of Civil Procedure 22. ECF Nos. 18, 24.

The Sleep Signals Defendants again moved to dismiss. This time they sought dismissal based on, among other things, lack of personal jurisdiction and failure to include the indispensable party T Built. ECF No. 27. Plaintiffs conceded that T Built was an indispensable party, ECF No. 29 at 14–15, so the Court granted the motion to dismiss but allowed Plaintiffs the opportunity to file a Third Amended Complaint (the "TAC") with T Built added, ECF No. 33. Plaintiffs did so.

The TAC alleges a rule and statutory interpleader claim against the Sleep Signals Defendants, Murodov, Sultan, T Built, and American Family. Plaintiffs allege that they are "disinterested stakeholders" in this proceeding, and they seek to deposit the $1,000,000 policy limits into the Court's registry. TAC, ECF No. 34 ¶ 54. They not only seek distribution of those policy limits, *id.* ¶ 50, but also a Court order that Mo. Rev. Stat. § 507.060 shields them from having to pay any amount in excess of the policy limits, *id.* ¶ 53. Plaintiffs also allege that if the Court determines other contractual coverage(s) apply, they will interplead those funds if required. *Id.* ¶ 51. In their prayer for relief, they broaden this request by asking for "[a]n Order that United and Oxford interplead and deposit into the Court the *applicable* contractual coverage in connection with the August 18, 2021 motor vehicle accident." *Id.* Request for Relief, § A. (emphasis added).

As far as the allegations against Defendants go, those regarding T Built and American Family are most pertinent for this Order. T Built is an Idaho LLC with its principal place of business in Shelley, Idaho. American Family is "organized" under Wisconsin law, but it allegedly is authorized and licensed to do business in Missouri and may be served through a registered agent in Missouri. The TAC does not explicitly define the relationship, if any, between T Built and American Family. Instead, it alleges that T Built is listed as the motorhome owner on the police report from the accident, but American Family has made a property damage claim for the motorhome. It also alleges that T Built may have made a damage claim on the motorhome.

The TAC provides no details about T Built's business, but it makes conclusory allegations related to personal jurisdiction. T Built allegedly advertised the motorhome on a website that could be viewed globally, including in Missouri; rented or leased the motorhome to the Sleep Signals Defendants; entered a joint venture with the Sleep Signals Defendants; knew or should have known the Sleep Signals Defendants were using the motorhome in other states, including Missouri; charged fees for mileage and other items for Sleep Signals Defendants' travel, including in Missouri; financially benefited from the Sleep Signals Defendants' music tour, including in Missouri; had its motorhome damaged, towed, and stored in Missouri; had the Idaho title to the motorhome surrendered and now has a Missouri title; and made a property damage claim.

Following the filing of the TAC, Plaintiffs filed a motion to have the Court accept the alleged $1,000,000 policy limits into the Court's registry. ECF No. 35. The Sleep Signals Defendants and T Built then filed a joint motion to dismiss for lack of personal jurisdiction and improper venue. ECF No. 39. American Family filed a nearly identical motion to dismiss. ECF No. 46. Those motions are all now ripe for review.

## Standard

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of a case or claim for "lack of personal jurisdiction." "Personal jurisdiction over a defendant represents the power of a court to enter a valid judgment imposing a personal obligation or duty in favor of the plaintiff." *Viasystems, Inc. v. EBM Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592 (8th Cir. 2011) (internal quotation marks omitted). Plaintiffs "bear the burden of establishing a prima facie showing of jurisdiction, and [the Court] views the facts in the light most favorable to [Plaintiffs]." *Kaliannan v. Liang*, 2 F.4th 727, 733 (8th Cir. 2021) (internal quotation marks omitted). The evidentiary showing required at this stage is minimal. *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022). "A prima facie showing is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Id.* (internal quotation marks omitted). In addition, the Court "may look beyond the pleadings to determine whether personal jurisdiction exists, including reviewing affidavits and other exhibits." *Id.* (internal quotation marks omitted).

Federal Rule of Civil Procedure 12(b)(3) allows for dismissal of a case for "improper venue." Dismissal is warranted if a case fails to satisfy the "federal venue laws." *See Atl. Marine Constr. Co. v. United States Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013) (citing 28 U.S.C. § 1406(a) and Fed. R. Civ. P. 12(b)(3)).

## Discussion

This is an interpleader action. Interpleader is a procedural vehicle that allows a disinterested stakeholder to have a court decide which of the two or more adverse claimants are entitled to the funds or property held by the stakeholder. *See Benchmark Ins. Co. v. SUNZ Ins. Co.*, 36 F.4th 766, 771 (8th Cir. 2022) (statutory interpleader); *Primerica Life Ins. Co. v. Woodall*,

975 F.3d 697, 699 (8th Cir. 2020) (rule interpleader).  The purpose of interpleader is to protect the stakeholder from double litigation or liability.  *Benchmark Ins. Co.*, 36 F.4th at 771.

An interpleader action typically has two stages.  *United States v. High Tech. Prods., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007).  First, the Court "determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader." *Id*.  Second, the Court decides the respective rights of the claimants.  *Id.*

This case is at the first stage.  Plaintiffs ultimately seek the distribution of the alleged $1,000,000 policy limits among Defendants.  But before the Court can do so, it must first address Defendants' jurisdictional and venue challenges.  Plaintiffs bring this action under two distinct procedural avenues: rule interpleader and statutory interpleader.  The Court addresses each form briefly because it necessarily frames Defendants' jurisdictional and venue challenges as well as the Court's concerns over subject-matter jurisdiction for statutory interpleader.

An interpleader action can be brought in federal court either under Federal Rule of Civil Procedure 22 (so called, "rule interpleader") or under 28 U.S.C. § 1335 (so called, "statutory interpleader").  Each avenue is designed to provide the same substantive relief as outlined above, but the jurisdictional and venue requirements differ between the two.

On the jurisdictional front, under rule interpleader, subject-matter jurisdiction must be established under 28 U.S.C. §§ 1331 or 1332, *see Federated Mutual Insurance Company v. Moody Station and Grocery*, 821 F.3d 973, 976 (8th Cir. 2016), and personal jurisdiction over non-domiciliary defendants is typically founded upon Federal Rule of Civil Procedure 4, state statutes, and due process, *see Madison Stock Transfer, Inc. v. Exlites Holdings Int'l, Inc.*, 368 F. Supp. 3d

460, 479 (E.D.N.Y. 2019). As for statutory interpleader, subject-matter jurisdiction is established under 28 U.S.C. § 1335 and personal jurisdiction is acquired under 28 U.S.C. § 2361. While statutory interpleader's jurisdictional requirements differ from those under rule interpleader in many ways, two are particularly relevant for purposes of this motion. First, to establish subject-matter jurisdiction, the stakeholder must deposit the at-issue funds or property into the Court's registry. 28 U.S.C. § 1335(a)(2). Second, statutory interpleader allows for nationwide service of process to obtain personal jurisdiction over all the claimants. 28 U.S.C. § 2361.

The venue provisions also differ between the two. While rule interpleader uses the general venue statute, 28 U.S.C. § 1391, statutory interpleader uses an interpleader-specific venue statute, 28 U.S.C. § 1397. The major difference between these statutes is that the interpleader-specific venue statute is more restrictive on the places where cases may be brought, confining them to "the judicial district in which one or more of the claimants reside." 28 U.S.C. § 1397. On the other hand, the general venue statute allows cases to be brought in a judicial district where a defendant resides (if all reside in the same state), where a substantial part of the events or property is located, or where a court has personal jurisdiction over a defendant if the other provisions do not apply. *See* 28 U.S.C. § 1391(b)(1)–(3).

The Moving Defendants challenge the propriety of rule and statutory interpleader. As for rule interpleader, the Moving Defendants argue that the Court lacks personal jurisdiction over any of them. On the statutory interpleader front, the Moving Defendants argue that venue is improper because no defendant "resides" within this district as required under 28 U.S.C. § 1397. The Court addresses these arguments in turn as well as highlighting a subject-matter jurisdiction issue not briefed by the parties.

### I. The Court does not have personal jurisdiction over T Built.

The Moving Defendants argue that the Court lacks personal jurisdiction over, among others, T Built because they are a non-Missouri LLC that has almost no contacts with Missouri. Plaintiffs argue that the Court has *in rem* jurisdiction over all claimants because Plaintiffs seek to deposit the insurance funds in the Court's registry and, alternatively, they have personal jurisdiction over T Built based on its sufficient minimum contacts with Missouri.

As an initial matter, the Court finds Plaintiffs' *in rem* jurisdiction argument unpersuasive. The Supreme Court long ago held that an interpleader case involving insurance proceeds is *in personam* in nature, so any parties that a court does not have jurisdiction over cannot be bound by the judgment. *See New York Life Ins. Co. v. Dunleavy*, 241 U.S. 518, 520–23 (1916); *see also Metro. Prop. & Cas. Ins. Co. v. Shan Trac, Inc.*, 324 F.3d 20, 25 (1st Cir. 2003) (citing *Dunleavy*, 241 U.S. at 521). And the cases Plaintiffs cite either never dealt with personal or *in rem* jurisdiction in an insurance case, were based on non-adversarial briefing, or are non-binding and unpersuasive. To be sure, the historical importance of labeling jurisdiction as *in personam* and *in rem* has dissipated over the years as they have melded into a more unified due process inquiry. *See generally Burnham v. Sup. Ct. of Cal., Cnty. of Marin*, 495 U.S. 604 (1990). But this progression does not wholly cast aside *Dunleavy*. And based on Plaintiffs' arguments and caselaw, the Court fails to see how due process would be satisfied if this Court exercised jurisdiction over Defendants—regardless of their connections to Missouri—simply because this is where Plaintiffs have *chosen* to deposit the insurance proceeds.

That leads the Court to the second issue: whether personal jurisdiction exists based on T Built's contacts with the forum. Although "[p]ersonal jurisdiction can be specific or general," *Viasystems, Inc.*, 646 F.3d at 589, Plaintiffs only attempt to assert specific jurisdiction over T Built.

"Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state." *Id.* (internal quotation marks omitted). As this is a diversity case, Plaintiffs must satisfy: (1) Missouri's long-arm statute; and (2) the Due Process Clause of the Fourteenth Amendment. *See id.*

Since Plaintiffs must prove both prongs, the Court moves directly to the due-process inquiry. *See id.* at 594. This requires the Court to analyze whether T Built "has sufficient 'minimum contacts with [Missouri] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Court must also inquire as to whether T Built "has 'purposefully availed' itself of the 'benefits and protections' of [Missouri] . . . to such a degree that 'it should reasonably anticipate being haled into court [here].'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985) and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)) (internal citations omitted). With these principles in mind, the Court's inquiry is guided primarily by five factors: "(1) the nature and quality of [T Built's] contacts with [Missouri]; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of [Missouri] in providing a forum for its residents; and (5) convenience of the parties." *Zazzle, Inc.*, 42 F.4th at 952 (internal quotation marks omitted).

Plaintiffs have not established that T Built has sufficient minimum contacts with Missouri. The TAC has several conclusory allegations that attempt to atomize a single fortuitous contact with Missouri (i.e., the motorhome accident) into numerous, seemingly-significant contacts with the state. T Built is an Idaho LLC. There are no allegations that it is licensed to do business here, that it has any offices or employees here, or that it even has a registered agent for service of process here. *See Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1091 (8th Cir. 2008). And the

conclusory allegation that T Built operated a website that *could be* accessed in Missouri does not help Plaintiffs since there is no evidence or allegations that Missouri residents accessed the website. *See Zazzle, Inc.*, 42 F.4th at 953 n.3. In fact, there is no evidence that T Built ever rented any motorhome to any Missouri resident. Here, it either rented or leased the motorhome to the Sleep Signals Defendants who are all out-of-state residents. Those individuals eventually drove it to Missouri where it was involved in an accident. There are no *facts*—as opposed to conclusions—that suggest T Built knew the Sleep Signals Defendants would drive the motorhome they rented from the Idaho company all the way to Missouri. Finally, the remaining contacts (e.g., the impounding of the vehicle in Missouri) were derivative of the accident, and they have nothing to do with any actions taken by T Built in this forum or directed at this forum. T Built's contacts with Missouri are "too random, fortuitous, [and] attenuated to support an assertion of jurisdiction in this case." *Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006).

Since the first three factors weigh heavily against personal jurisdiction and the remaining factors are of limited importance and/or neutral, personal jurisdiction over T Built is lacking. *See Zazzle, Inc.*, 42 F.4th at 953–54. And this is fatal to Plaintiffs' rule interpleader claim because they previously conceded—and the Court held—that T Built is an indispensable party that must be part of this interpleader case. *See* ECF No. 29 at 14–15; ECF No. 33 at 2. Accordingly, Plaintiffs' rule interpleader claim is DISMISSED WITHOUT PREJUDICE. T Built, however, is still a party to the statutory interpleader claim pending the Court's ruling on the subject-matter jurisdiction and venue issues noted below.

**II.      The Court needs further briefing on subject-matter jurisdiction and the venue issues related to Plaintiffs' statutory interpleader claim.**

The Moving Defendants argue that the statutory interpleader claim should be dismissed because none of them "reside" within this district as required by the interpleader-specific venue

10

statute. Plaintiffs provide a cursory response that American Family "resides" within this district based on the definition of that term used in the general venue statute. In wading through the parties' arguments as well as caselaw on the issue, the Court noticed several issues that need to be further briefed by the parties. And those issues not only pertain to venue, but also subject-matter jurisdiction. The Court addresses the latter issue first, as it must be established before the Court can even consider venue.

### A. The parties must brief the issue of subject-matter jurisdiction.

As noted above, statutory interpleader has its own jurisdictional provision. *See* 28 U.S.C. § 1335. The most relevant part of this provision requires Plaintiffs to "deposit the money or property in the registry of the district court." *Acuity v. Rex, LLC*, 929 F.3d 995, 1001 (8th Cir. 2019). In the insurance interpleader context, the Eighth Circuit has made clear that an interpleader plaintiff must "deposit the amount claimed by [the claimant-defendants] … or at the very least the largest amount for which it may be liable in view of the subject matter of the controversy." *Id.* (holding that the district court properly dismissed a statutory interpleader claim for lack of subject-matter jurisdiction where the plaintiff only offered to deposit the $1,000,000 it *believed* the claimant-defendants were entitled to under the policy, not the $21,000,000 coverage that the Court found *could* apply under the insurance policy) (internal quotation marks and citations omitted).

Here, it is not clear whether the *Acuity* requirements have been met. In an apparent attempt to satisfy them, Plaintiffs have filed a motion with the Court to deposit $1,000,000 in the Court's registry. This amount, according to Plaintiffs, is what they *believe* the Moving Defendants are entitled to under the insurance policy. *See* TAC ¶¶ 50–51. This is nearly identical to what Acuity did. *See* 929 F.3d at 998. But Plaintiffs also allege that the Court may determine *other* provisions apply and they will interplead those funds. *Id.* ¶ 51. Their request for relief broadens this

11

allegation, asking for an order that they deposit "the *applicable* contractual coverage in connection with the August 18, 2021 motor vehicle request." *Id.*, Request for Relief, § A (emphasis added). They also seek an order pursuant to Mo. Rev. Stat. § 507.060 that they are not liable to any claimants in excess of the contractual limits. These additional allegations and requests for relief beg the obvious questions under *Acuity*: (1) what are the Moving Defendants seeking?; and (2) what is the *largest* amount for which Plaintiffs may be liable in view of the subject matter of the controversy? If the answer to one of these is over the $1,000,000 Plaintiffs have offered to deposit into the Court's registry (and some of the allegations suggest that *may* be the case[1]), then the Court may not have subject-matter jurisdiction unless and until Plaintiffs offer—and the Court accepts—that higher deposit amount.

But the Court lacks sufficient information to answer either of these questions. Since the Court cannot rule on the merits of the Moving Defendants' venue arguments without first establishing subject-matter jurisdiction, that portion of the motion is DENIED WITHOUT PREJUDICE. And because the Court may determine that a larger amount is necessary to be deposited for subject-matter jurisdiction purposes, Plaintiffs' motion to deposit funds is DISMISSED WITHOUT PREJUDICE. Plaintiffs may refile that motion, if necessary, after the Court decides the subject-matter jurisdiction issue.

The Moving Defendants shall refile their motion to dismiss within twenty-one (21) days of this Order, and they shall address whether the Court has subject-matter jurisdiction under *Acuity* and related cases. Plaintiffs shall file an opposition within fourteen (14) days of the Moving

---

[1] For example, if other provisions apply, what is the largest amount in "controversy"? And does the request to cap liability under Mo. Rev. Stat. § 507.060 mean that some amount in excess of that is necessarily in "controversy"? And if so, what is that amount? And what impact, if any, does the state court litigation have on this subject-matter jurisdiction issue? Depending on the answers to these and other questions, the amount here might exceed the $1,000,000 proposed by Plaintiffs.

Defendants' motion.  The Moving Defendants shall file a reply within seven (7) days of Plaintiffs' opposition.

### B. The parties must re-brief the statutory interpleader venue issue.

The statutory interpleader venue issue also requires further briefing.  As noted above, the interpleader-specific venue statute specifies that "[a]ny civil action of interpleader or in the nature of interpleader under section 1335 of this title may be brought in the judicial district in which one or more of the claimants reside."  28 U.S.C. § 1397.  "Reside" is not defined in this section.  But this statute is part of a larger chapter, which contains the general venue statute as its first entry.  *See* 28 U.S.C. § 1391.  Subsections of the general venue statute define residency "for all venue purposes," 28 U.S.C. § 1391(c), as well as "for purposes of venue under this chapter," *id.* § 1391(d).  As framed by the parties, the central issue is whether the term "reside" as used in § 1397 is controlled by the definitions of residency in § 1391.

Neither the Eighth Circuit nor the Supreme Court has weighed in on this issue.  Nor do the parties cite any other Circuit Court cases addressing the issue.  There is a smattering of district court opinions on the issue, but none of the cases the parties cite conduct in-depth statutory construction.  Neither do the parties, as they mostly rely on the district court cases.  The Moving Defendants, however, cite the Supreme Court's holding in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 581 U.S. 258 (2017) that the patent-specific venue statute[2] does not incorporate the general venue statute's residency definition.  Plaintiffs do not meaningfully respond to this argument.

At bottom, this is a statutory construction issue.  And while *TC Heartland* is certainly instructive on the tools that the Supreme Court uses to analyze specific venue statutes, the Supreme

---

[2] The patent-specific venue statute is in the same chapter as the interpleader-specific and "general" venue statutes.

Court has warned that "analysis of special venue provisions must be specific to the statute." *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 204 (2000).  So *TC Heartland* does not necessarily control the result here.  Instead, the parties should support their positions on this issue by resorting to the analytical tools the Court employed in *TC Heartland* and the cases it relied upon.  Those cases include, but are not limited to, *Pure Oil Co. v. Suarez*, 384 U.S. 202 (1966), *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222 (1957), and *Stonite Products Co. v. Melvin Lloyd Co.*, 315 U.S. 561 (1942).  Those cases focus on the legislative history and purpose for the specific venue statute vis-à-vis the general venue statute, the Supreme Court's interpretation of terms from those statutes over time, the historical progression of the statutes, and the effect, if any, of the amendment and reorganizing of these statutes.  The parties should do the same here.  They should also provide the Court with caselaw—preferably cases from the Circuit Courts or Supreme Court—that may address the residency definition issue for *other* specific venue statutes in the same chapter as the general and interpleader-specific venue statutes.  And they should also provide any other helpful Circuit Court and Supreme Court precedent that addresses similar issues.  *See, e.g., KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718 (7th Cir. 2013).

The briefing on this issue shall be combined in a renewed motion to dismiss with the subject-matter jurisdiction issue noted above, and shall adhere to the same schedule.

### III. The other arguments raised in the briefs.

The Moving Defendants also argue that dismissal is warranted because American Family is not a true party in interest.  They may include that argument in the motion addressing the subject-matter jurisdiction and venue issues noted above as it dovetails off the venue issue.  But they also ask the Court to strike or dismiss Plaintiffs' request for an order under Mo. Rev. Stat. § 507.060.

14

That argument is a bit premature in light of the potentially significant jurisdictional and venue issues raised. So they may raise that issue, if necessary, after the Court rules on those issues.

### Conclusion

For the foregoing reasons, the motions to dismiss are GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE, and the motion to deposit funds is DENIED WITHOUT PREJDUICE. Plaintiffs' Federal Rule of Civil Procedure 22 interpleader claim is DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction over T Built. But the Court requires additional briefing on whether subject-matter jurisdiction exists and venue is proper for Plaintiffs' statutory interpleader claim, so that part of the motion is DENIED WITHOUT PREJUDICE.

As outlined below, the Moving Defendants shall refile a combined motion that solely focuses on the subject-matter jurisdiction and venue issues highlighted below within twenty-one (21) days of this order. Plaintiffs shall file an opposition within fourteen (14) days of the Moving Defendants' motion. The Moving Defendants shall file a reply within seven (7) days of Plaintiffs' opposition. Plaintiffs may refile their motion to deposit funds, as appropriate, after the Court decides the subject-matter jurisdiction and venue issues.

**IT IS SO ORDERED.**

Date: March 27, 2023　　　　　　　　　　　　/s/ Greg Kays
　　　　　　　　　　　　　　　　　　　　　GREG KAYS, JUDGE
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT